IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COREY TWIGG, *et al.*, | No. 4:23-CV-00067 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| VARSITY BRANDS HOLDING CO., INC. *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

JANUARY 28, 2026

After nearly five years of litigation, this case is scheduled for trial beginning on March 2, 2026.[1] One of the final hurdles the Court faces before the Court takes the bench for the final disposition of this case are deciding the parties' motions in limine to aid the parties in their preparation for March 2nd. Six such motions are now before the Court. Each has been fully briefed and are now ripe for disposition. All six will be addressed in this opinion, with the Court beginning by analyzing the two joint motions filed by various defendants and then moving to a review of the Plaintiffs' four motions.

---

[1] Doc. 129.

I.   **DEFENDANTS' JOINT MOTIONS IN LIMINE**

Defendants Varsity Brands Holding Co., Inc. ("Varsity Brands"), BSN Sports Inc. ("BSN"), Sport Supply Group, Inc. ("Sport Supply"), and Garware Technical Fibers LTD ("Garware") filed two joint motions in limine.[2] The first seeks to limit what medical expenses Plaintiff may seek to admit at trial.[3] The second motion attempts to limit the Plaintiffs ability to use the "reptile theory" or the "golden rule" in front of the jury at trial.[4] Each issue will be addressed in turn.

A.   **Medical Expenses**

In the first joint motion in limine, Defendants seek "to restrict Plaintiffs in the submission at trial of only such medical expenses as were paid and accepted as payment in full."[5] Surprisingly, Plaintiffs agree with the controlling precedent offered by Defendants, as they say it provides that "evidence of the difference between the amount billed and the amount accepted as payment in full (the negotiated rate) is inadmissible to prove the reasonable value of medical services for the purpose of economic damages."[6] They also acknowledge that "that the economic damages component of their medical expenses will ultimately be limited to the

---

[2]   *See* Docs. 131, 133. These Defendants encompass four of the five total defendants in this case. The fifth, Spartan Athletic Company, did not play a part in the filing of these motions in limine or arguing against the Plaintiffs' motions in limine. Despite this, for the sake of conciseness, I will refer to the four Defendants who filed the joint motions in limine and defended against the Plaintiffs' motions in limine as "Defendants."
[3]   *See* Doc. 131.
[4]   *See* Doc. 133.
[5]   Doc. 132.
[6]   Doc. 152 (citing *Moorehead v. Crozer Chester Medical Center*, 765 A.2d 786 (Pa. 2001)).

amounts paid and accepted as satisfaction in full."[7] But this is where the parties agreement ends. While Defendants believe that their agreement on the recoverable expenses renders any further evidence on the subject inadmissible, Plaintiffs assert that such evidence would be "relevant to the jury's consideration of the nature, extent, and severity of the injury and the resulting non-economic damages."[8] They would have this be addressed as a jury instruction or a molding of the verdict.[9]

The parties are correct in noting that "damages for past medical expenses, although recoverable to the fullest extent of the injury sustained, are nonetheless limited to those expenses that 'have been actually paid, or such as, in the judgment of the jury, are reasonably necessary to be incurred.'"[10] While there may be some limited probative value of providing the entire medical bills to advance an understanding of the extent and the severity of Mr. Twigg's injuries and potential non-economic damages, there is a higher "risk of misleading the jury into thinking it could award damages based on those medical bills."[11] Additionally, there seems to be a plethora of other avenues that the Plaintiffs can pursue to show the extent and severity of the injuries.[12] Therefore, the Court will grant the Defendants first joint

---

[7] *Id.* at 1-2.
[8] *See* Docs. 132, 152.
[9] *See* Doc. 152 at 2.
[10] *Watts v. Hollock*, No. 3:10CV92, 2011 WL 6026998, at *10 (M.D. Pa. Dec. 5, 2011) (quoting *Moorhead v. Crozer Chester Med. Ctr.*, 765 A.2d 786, 789 (Pa.2001)).
[11] *Surman v. Payne*, No. CV 3:19-216, 2023 WL 2716224, at *4 (W.D. Pa. Mar. 30, 2023).
[12] One potential avenue would simply be describing the injuries and how they have affected Mr. Twigg's day-to-day life.

motion and bar the admission of medical bills and expenses beyond what was actually paid and accepted as payment under Federal Rule of Evidence 403.[13]

## B.  The Reptile Theory

The first part of Defendants second joint motion in limine asks the Court to bar the Plaintiffs use of the "reptile theory" in any aspect of the trial.[14] The Reptile Theory "is a method of persuading jurors to find in a plaintiff's favor by invoking the primal (or reptilian) part of jurors' minds, which drives them to act to protect themselves or their community."[15] While the Defendants spend a great deal of time addressing the ills of arguments based on the Reptile Theory, their motion is premature.[16] "Without proper context and having heard the specific question and/or testimony at issue, the Court is unable to determine whether that question and/or testimony is objectionable." Therefore, the aspect of the second joint motion related to arguments utilizing the reptile theory will be denied without prejudice. However, Defendants retain the ability "to raise this issue by timely and specific objection on

---

[13] *See* FED. R. EVID. 403 ("The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). As a final note, the granting of this motion only relates to the admissibility of past medical bills. Plaintiffs are free to make any arguments on, and submit any evidence of, potential future medical expenses, as courts have "uniformly rejected the application of *Moorehead*" in that arena. *See Surman*, 2023 WL 2716224, at *4 n.3.

[14] *See* Doc. 133.

[15] *Aurigemma v. Costo Wholesale Corp.*, No. 3:18-CV-1719, 2023 WL 197044, at *7 (D. Conn. Jan. 17, 2023) (citing *Baxter v. Anderson*, 277 F. Supp. 3d 860, 861 (M.D. La. 2017)).

[16] *See, e.g.*, *id*; *Botey v. Green*, No. 3:12-CV-1520, 2017 WL 2485231, at *2 (M.D. Pa. June 8, 2017).

each occasion where they believe that testimony is being offered for an [objectionable or] improper purpose."[17]

### C. The Golden Rule

In their second joint motion in limine, Defendants also request that the Court bar the solicitation of testimony based on the Golden Rule.[18] That rule is a trial strategy, "which asks a juror to put themselves in a party's position."[19] The United States Court of Appeals for the Third Circuit has discussed the Golden Rule and stated that its "propriety… is doubtful because it 'encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'"[20] It also noted that all uses of "the argument [are] improper."[21]

Plaintiffs agree that use of the Golden Rule at trial would constitute a "prohibited tactic."[22] Despite this, they argue that the rule "does not bar arguments about community safety or the importance of a verdict in holding corporations

---

[17] *Boley*, 2017 WL 2485231, at *2. The Defendants should be on notice that the Court does not agree with their assessment of safety evidence as "irrelevant." *See* Doc. 133 ¶ 34. Rather, "evidence regarding safety rules and practices may be relevant to the questions of negligence." *R.D. v. Shohola, Inc.*, No. 3:16-CV-01056, 2019 WL 6134726, at *4 (M.D. Pa. Nov. 19, 2019) (citing *Kube v. Bethlehem Steel Corp.*, 390 F.2d 506, 507 (3d Cir. 1968)). Additionally, only questions that "inappropriately incite a jury to make a determination on an improper basis" should be objected to for this reason—and it is unclear whether Reptilian style questions would do so. *See Aurigemma*, 2023 WL 197044, at *7.

[18] *See* Doc. 133.

[19] *Aurigemma*, 2023 WL 197044, at *7 (citing Barrella v. Vill. of Freeport, 714 F. App'x 78, 80 (2d Cir. 2018)).

[20] *Edwards v. City of Philadelphia*, 860 F.2d 568, 574 (3d Cir. 1988) (quoting *Spray–Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226, 1246 (7th Cir.1982)).

[21] *Id.* at 574 n.6.

[22] Doc. 149, at 3.

accountable."[23] The Court believes that Plaintiffs have read this prong of the Defendants motion too broadly. All Defendants seek is to prohibit "arguments or [solicited] testimony based on the Golden Rule."[24] They do not seek to generally bar questions about safety or holding corporations accountable—or at least their motion does not clearly articulate such a request.[25] Because Defendants only seek to bar the usage of the Golden Rule at trial and the parties appear to be in agreement regarding the impropriety of this usage, the Court will grant that aspect of the motion.[26]

## II. PLAINTIFFS' MOTIONS IN LIMINE

Plaintiffs raise four arguments, in four separate motions in limine, seeking to prohibit the introduction of specific evidence: (1) conduct evidence of Mr. Twigg—particularly evidence that he may have been at fault for his injuries, (2) prior accidents involving similar L-Screen products, (3) the lack of industry standards relating to the L-Screens, and (4) spoilation evidence related to the L-Screen involved in Mr. Twigg's injuries.[27] Again, each issue that is raised will be addressed in turn.

---

[23] *Id.*
[24] Doc. 133 ¶ 38.
[25] In the event that the Defendants are seeking such broad relief, the Court would deny their efforts to preclude all mentions of these topics. This would amount to them "seek[ing] to preclude many hypothetical scenarios in which the plaintiffs' counsel could make improper arguments or statements to the jury. Such requests are premature, as we cannot know what counsel intends to argue until the time of trial." *Doe v. Schuylkill Cnty. Courthouse*, No. 3:21-CV-477, 2025 WL 389499, at *2 (M.D. Pa. Feb. 4, 2025).
[26] *See id.*
[27] *See* Docs. 135-38.

### A.     Conduct Evidence

Plaintiffs' first motion in limine requests that the Court "preclude[e] the Defendant from introducing any evidence or making any arguments at trial concerning the Plaintiff's conduct as a cause of the accident."[28] They argue that such evidence should be barred for three reasons: (1) because it is irrelevant, (2) because Pennsylvania law precludes the admission in strict liability cases, and (3) because it would be unduly prejudicial.[29] Each argument is severely underdeveloped and, ultimately, unconvincing.

While Plaintiffs make a compelling argument for why this evidence is irrelevant to their strict liability claim, they ignore the fact that their complaint included a negligence claim.[30] That claim remains alive in this litigation, and this Court "decline[d] to deem this claim abandoned" at the motion to dismiss stage.[31] Given that Pennsylvania is a modified comparative negligence system, evidence of Plaintiffs conduct would certainly be relevant to the negligence claim here.[32]

Plaintiffs also allege in conclusory fashion, and with no citation to relevant case law, that Pennsylvania law bars the admission of such evidence in a strict

---

[28] Doc. 135, at 3.
[29] *Id.*
[30] *See* Doc. 1, at 10.
[31] Doc. 117, at 45.
[32] *See* 42 PA. CONS. STAT. § 7102; *Marks v. Redner's Warehouse Mkts.*, 136 A.3d 984, 988-89 (Pa. Super. Ct. 2016) (citing *Terwilliger v. Kitchen*, 781 A.2d 1201, 1209 (Pa. Super. Ct. 2001)); *Knight v. Avco Corp.*, No. 4:21-CV-00702, 2025 WL 2677533, at *4 (M.D. Pa. Sept. 18, 2025).

liability case.[33] That assertion must be flatly denied, as there are several reasons that a Plaintiff's negligent conduct can be admissible in a strict liability case.[34] Of note, such evidence can be extremely relevant to a proximate cause analysis—a required element of a strict liability claim in Pennsylvania.[35] Additionally, the Third Circuit has said that "that a jury may consider a plaintiff's actions first to decide if a plaintiff's conduct was not reasonably foreseeable or were otherwise extraordinary, and, if so, then to consider whether the conduct or the defect was the substantial factor in causing the plaintiff's harm."[36] Such an argument is the precise reason that Defendants seek to admit evidence of Mr. Twigg's conduct.[37] As a result, this evidence is not barred from being entered in the trial of this case.

Plaintiffs' final argument that such conduct evidence would be unduly prejudicial is also undeveloped and unconvincing. The Third Circuit has explicitly stated that "*pretrial* Rule 403 exclusions should rarely be granted."[38] "Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage."[39] The Court agrees with this logic.

---

[33] *See* Doc. 135, at 3.
[34] *See Sweitzer v. Oxmaster, Inc.*, No. CIV.A. 09-5606, 2010 WL 5257226, at *7 (E.D. Pa. Dec. 23, 2010).
[35] *See id.* at *6.
[36] *Id.* at *7 (quoting *Parks v. AlliedSignal, Inc.,* 113 F.3d 1327, 1336 (3d Cir.1997)) (internal quotation marks omitted).
[37] *See* Doc. 147, at 8.
[38] *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).
[39] *Id.*

This is not a case where the Court has before it "a record complete enough on the point at issue to be considered a virtual surrogate for a trial record."[40] That is the sole requirement "to exclude evidence under Rule 403 at the pretrial stage," and it is clear that it is not met in this case. As a result, an objection to this evidence under Rule 403 Federal Rule of Evidence is premature. However, the Plaintiffs may raise this objection when such evidence is raised at trial.

Because all of Plaintiffs' arguments regarding the inadmissibility of evidence of Mr. Twigg's conduct are unpersuasive, Plaintiffs' first motion in limine is denied without prejudice.

### B.   Prior Accidents

Plaintiffs also argue that Defendants should not be allowed to submit "any evidence or mak[e] any arguments at trial of [the lack of] prior similar accidents involving the L-Screen Net at issue."[41] First it is necessary to make a determination that is essential to an analysis of this motion: whether state or federal law applies. Both parties ignore this crucial question, but the Third Circuit has conclusively stated that "the question presented is governed by federal rather than state law."[42]

"Testimony concerning an alleged absence of prior accidents will usually satisfy the relevance threshold established by Rule 402. Such testimony, however,

---

40   *Id.*
41   Doc. 136, at 1.
42   *Forrest v. Beloit Corp.*, 424 F.3d 344, 354 (3d Cir. 2005).

by its very nature, raises significant concerns regarding unfair prejudice to the plaintiff, and these concerns are heightened in product liability cases arising under Pennsylvania law."[43] Therefore, an analysis under Rule 403 of the Federal Rules of Evidence is essential when prior accidents evidence is at issue.[44] When conducting such an inquiry, "courts … have recognized that the probative value of such evidence is determined in large measure by the foundation laid by the offering party."[45] Generally, there are three elements to an adequate foundation: "(a) *similarity*—the defendant must show that the proffered testimony relates to substantially identical products used in similar circumstances; (b) *breadth*—the defendant must provide the court with information concerning the number of prior units sold and the extent of prior use; and (c) *awareness*—the defendant must show that it would likely have known of prior accidents had they occurred."[46]

Despite Plaintiffs claims, evidence of previous injuries with similar or identical L-Screen products "has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, and is relevant."[47] But this evidence must still survive a Rule 403 analysis. What will ultimately determine the admissibility, under

---

[43] *Id.* at 358.
[44] *Id.* at 356.
[45] *Id.* at 355.
[46] *Id.* at 358.
[47] *Facciponte v. Briggs & Stratton Corp.*, No. 3:09CV1584, 2011 WL 3841640, at *2 (M.D. Pa. Aug. 29, 2011) (quoting FED. R. EVID. 402) (internal quotations omitted).

Rule 403, of this evidence is the adequacy of the foundation that the Defendants set forth when they seek to proffer the evidence.[48] At the current state of the litigation — with no idea what hypothetical foundation could be laid for such evidence — the Court cannot undertake a proper Rule 403 inquiry. Therefore, the Court will deny Plaintiffs' second motion in limine without prejudice.[49]

### C.    Specification Standards

Plaintiffs next seek to preclude "any evidence or argument at trial that the subject product, the L-Screen, was not required to adhere to any industry or manufacturing specifications, standards, or regulation."[50] Prior to 2014, this kind of evidence would appear to have been relevant to the Plaintiffs negligence claim, but would have been conclusively barred for the strict liability claim.[51] However, that year, the Pennsylvania Supreme Court overturned a previous precedent and left up in the air the state of the rule that prohibited evidence of industry standards in strict liability cases.[52] While that inconclusive determination left many issues unresolved in this area, what it did make clear was that courts applying Pennsylvania law

---

[48]  *See id.*; *Forrest*, 424 F.3d at 355.
[49]  Plaintiffs may reassert this argument at trial after a foundation is attempted to be given. At that point, the Court will be in a better position to ascertain that foundation's adequacy and conduct the proper Rule 403 analysis. *See Facciponte*, 2011 WL 3841640, at *2.
[50]  Doc. 137.
[51]  *See Sweitzer v. Oxmaster, Inc.*, No. CIV.A. 09-5606, 2010 WL 5257226, at *11 (E.D. Pa. Dec. 23, 2010) ("Under Pennsylvania law, a jury may not consider evidence of industry standards or regulations to show the alleged reasonableness of a manufacturer's conduct in its design choice or the alleged absence of a product defect. *Lewis v. Coffing Hoist Div.,* 515 Pa. 334, 528 A.2d 590, 594 (Pa.1987)").
[52]  *See Tincher v. Omega Flex, Inc.*, 628 Pa. 296, 104 A.3d 328 (2014).

"should not draw a bright line between negligence theories and strict liability theories regarding evidence of industry standards."[53] Other courts in this district have held that such evidence is relevant to both negligence and strict liability claims and this Court agrees.[54] Therefore, the evidence will be deemed admissible and Plaintiffs' Third Motion in limine is denied.[55]

### D. Spoilation

Finally, Plaintiffs seek the prohibition of any evidence or argument "concerning any alleged spoliation of the L-Screen Safety Net."[56] "Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Such evidence permit[s] an inference, the 'spoliation inference,' that the destroyed evidence would have been

---

[53] *Cloud v. Electrolux Home Prods., Inc.*, No. CV 15-00571, 2017 WL 3835602, at *2 (E.D. Pa. Jan. 26, 2017). The case of *Sullivan v. Werner Co.*, 306 A.3d 846 (Pa. 2023), does not impact the Court's analysis. While this evidence is "inadmissible in design defect cases to show a product is not defective under the risk-utility theory," *Sullivan* did not address the admissibility of such evidence under the consumer expectation theory—a theory advanced in this case. *Sullivan*, 306 A.3d at 861. It appears that the reason the Defendants would proffer such evidence is to advance a claim under this theory. *See* Doc. 156, at 11. While this evidence may only be marginally probative of a claim under the consumer expectation theory, it appears to the Court that it satisfies the relevance standards of the Federal Rules of Evidence, and, therefore, is admissible.

[54] *See, e.g.*, *Cloud*, 2017 WL 3835602, at *2.; *Lehmann v. Louisville Ladder Inc.*, 610 F. Supp. 3d 667, 689 (E.D. Pa. 2022).

[55] Plaintiffs also argue that such evidence would be unduly prejudicial. Doc. 137, at 1. For the same reasons as provided in the analysis of Plaintiff's first motion in limine, this argument is premature. *See In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990). The Plaintiffs may reiterate this argument at trial where appropriate, but granting such an "extreme measure" will not be done at this stage. *Id.*

[56] Doc 138, at 1.

unfavorable to the position of the offending party"[57] However, for the spoilation doctrine to apply, the party must have been in control of the evidence and there must have been "an actual suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."[58]

Here, Defendants have proffered no evidence that *Mr. Twigg* was either in control of the evidence or actually suppressed it. Their only statement on the matter is: "the director, coach, and other staff members of Montoursville High School all touched the L-screen net after the date of loss. In addition, this L-screen net was stored in a garage with another L-screen net and the school merely made a distinction between the two nets based off of what a school employee said was the subject net."[59] Such a week showing of evidence is insufficient to make out control or suppression by Mr. Twigg. Without that showing of control and bad faith, no "sanctionable spoliation" has occurred.[60]

With no evidence that spoliation has actually occurred, the Court will not allow the jury to hear evidence of spoliation in this case.[61] Such evidence would

---

[57] *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994) (citations omitted).
[58] *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).
[59] Doc. 155, at 8.
[60] *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012).
[61] If Defendants have evidence that the Plaintiffs had control of the L-Screen and actually suppressed or withheld it, they may raise it at trial. *See Brewer*, 72 F.3d at 334. But in the

13

violate Rule 403 of the Federal Rules of Evidence; it would not be relevant, since it would concern individuals and entities who are not parties to this case, and it would be highly prejudicial to the Plaintiffs. Therefore, Plaintiffs' Fourth Motion in Limine is granted.

## III.   CONCLUSION

For the foregoing reasons, Defendants' Joint Motion in Limine to Exclude Medical Evidence and Plaintiffs' Fourth Motion in Limine are granted. Defendants' Joint Motion in Limine to Preclude Arguments is granted in part and denied in part. Finally, Plaintiffs' Third Motion in Limine is Denied, while their First and Second Motions in Limine will be denied without prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

absence of that evidence, the Court will not allow evidence of the general unavailability of the L-Screen.