**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **COREY TWIGG AND LORI TWIGG,** **HUSBAND AND WIFE** | : Civil Action |
| | : |
| Plaintiffs, | : |
| | : No.: 4:23-cv-00067-MWB |
| vs. | : |
| | : |
| **BSN SPORTS** | : |
| **VARSITY BRANDS HOLDING CO., INC.,** | : |
| **GARWARE et al** | : |
| Defendants | : |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT**
**OF OMNIBUS MOTION FOR POST-TRIAL RELIEF**

Plaintiffs Corey and Lori Twigg, by and through their counsel, N.W. Mattiacci Law, LLC, respectfully submit this Reply to the Defendants respective Briefs in Opposition:

## I.    NEW RESEARCH TOOLS AND THE INTEGRITY OF COUNSEL

The procedural history of this litigation, spanning over five years and over 200 docket entries, has been marked by Plaintiff's meticulous adherence to the Rules of Civil Procedure. It is only now, at the conclusion of this matter, a novel technological issue has arisen—an issue that only recently introduced a matter of first impression for Plaintiffs' counsel as a solo practitioner. Following an arduous six-day product liability trial marked by the emotional and technical complexity of twenty-one witnesses, including 12 experts, Plaintiffs' counsel drafted and filed several complex post-trial motions within a feverish two-week window to ensure over compliance with the rules of Court.

In contrast, the Defense—bolstered by a corporate infrastructure and a rotating team of attorneys—enjoyed the luxury of more than six weeks to craft their response while previously acknowledging their own investment and use of artificial intelligence systems within their respective law firms. Despite this disparity, Plaintiffs' counsel proactively identified and

corrected research errors in the initial filings and moved to rectify the record before a defense challenge was even issued. While counsel successfully vetted the majority of these issues in the final Omnibus Motion, minor discrepancies remained—an oversight that lacked any intent to deceive, as the substantive law regarding binding stipulations and delay damages are immutable.

Plaintiffs' Counsel's use of newly marketed research tools was born out of a necessity to compete while working under a condensed post-trial deadline that presented issues of first impression for them. The resulting clerical errors, which were again identified and mostly corrected by Counsel, are a byproduct of a shifting landscape in the legal professional—not a lack of candor. It is a harsh irony that tools intended to ensure a level playing field can, through a technical glitch, be used as a weapon by the very corporate interests it was designed to challenge. Crucially, the few discrepancies isolated by the Defendants are entirely superfluous to the merits of the Motion. There is an ample, uncontested body of law—totaling approximately 25 case citations and statutes in Plaintiffs' Memorandum—that independently support the three core pillars of requested relief to ensure the 'Judgment Finally Obtained' includes: 1) molding the verdict, 2) awarding delay damages, and 3) the taxation of costs.

Defendants' attempt at drawing this Court's attention to Plaintiffs' scrivener's error is a blatant act of deflection that does nothing to mitigate their unclean hands. If this Honorable Court is to apply "candor" and Rule 11 standards, it *cannot* overlook Defendants' conduct at trial, in which they intentionally attempted to introduce deposition testimony from Dr. Tamhanker that this Court *explicitly* previously ordered stricken. This flagrant act of deception required a last-minute intervention by Plaintiffs' counsel to prevent the introduction of improper evidence—an act itself which skirts the boundaries of Federal Rule of Civil Procedure 11. The hallmark of candor is the proactive attempt to correct an honest mistake; in contrast, the

Defendants' attempt to introduce stricken testimony into evidence at trial was not an oversight, but a strategic decision to disregard a judicial order—an act that weighs far more heavily on the integrity of this case than a citation that can be corrected. Nonetheless, unlike Defendants, Plaintiffs' counsel is not requesting sanctions against Defendants, instead respectfully choosing to focus on the substantive merits, which Defendants are obviously seeking to avoid, i.e., whether the Past Economic Loss Stipulation is binding upon a showing of liability and causation (Ex. P-100).

Lastly, the Defendants suggest that the inclusion of the taxation of costs in the Omnibus Motion violates this Court's March 19, 2026, Order, which directed a Bill of Costs to be filed thirty days after a ruling on post-trial motions. The same Order explicitly provided deference for the Defendants to later file post trial motions but Defendants themselves also did not wait to file their own taxation of costs. Plaintiffs' counsel acknowledges the Court's instruction but respectfully clarifies that the inclusion of costs within the Omnibus Motion was ***a good-faith effort to ensure compliance with the "Omnibus" nature of the mandate and to preserve the record by ensuring all of the necessary financial components were efficiently presented for the Court to calculate the 'Final Judgment Obtained'.*** Plaintiffs' counsel acted out of an abundance of caution regarding the strict timelines of Fed. R. Civ. P. 54(d) and Local Rule 54.1. Under standard federal practice, costs must often be sought within 14 to 30 days of judgment. Given the procedural complexity of the multiple post-trial filings in this matter, counsel sought to include the $17,340.39 in costs now to prevent any future argument by the Defendants that the right to costs had been waived by a failure to strictly adhere to the default federal or local rules.

Finally, and most critically, the specific amount of taxable costs is substantively necessary for the Court's evaluation of the Omnibus Motion because the Defendants have raised

a Rule 68 defense, the Court must calculate the "Judgment Finally Obtained" to determine if the Plaintiffs surpassed the Feb 13, 2026, offer. This calculation is impossible to perform without the inclusion of pre-offer costs. *Marryshow v. Flynn*, 986 F.2d 689 (4th Cir. 1993). By including the costs now, Plaintiffs have provided the Court with the complete data set—Principal, Delay Damages, and Costs—required to reach a final, appealable judgment of $958,147.50. Plaintiffs respectfully request that the Court accept the inclusion of costs as a proactive measure to assist in the final disposition of this case, rather than a disregard for the Court's scheduling order.

## II.    PLAINTIFFS' REASONABLE RELIANCE ON THE BINDING STIPULATION IN EVALUATING THE OFFER OF JUDGMENT

The core of the present motion remains the binding economic loss stipulation. In addition to the mandatory nature of the relief sought, the Court should consider the context in which the Defendants' February 13, 2026, Offer of Judgment was evaluated. A significant factor in Plaintiffs' decision to proceed to a verdict was the existence of the parties' binding economic loss stipulation, which totaled **$423,024.87**—nearly half of the Defendants' total offer. Plaintiffs' counsel relied upon the well-settled principle that a stipulation withdraws a fact from issue and is binding on the court. See *Waldorf v. Shuta*, 142 F.3d 601 (3rd Cir. 1998). In Plaintiffs' assessment, establishing liability and causation—which the jury ultimately found—would naturally trigger the recovery of these liquidated sums as a matter of law. With the economic losses proven upon a finding of liability, it was entirely reasonable for Plaintiffs to believe that a jury's subsequent award for non-economic damages, combined with mandatory delay damages and taxable costs, would surpass the offer of judgment threshold.

Plaintiffs relied on the Defendants' own signed agreement. It is an exercise in bad faith for the Defendants to now suggest that the jury had the discretion to ignore that very stipulation, thereby artificially depressing the "Judgment Finally Obtained" to trigger the cost-shifting

provisions of Rule 68. The Court should not permit the Defendants to use clerical errors to avoid the likelihood that the total judgment—when properly molded to include stipulated losses—will exceed their previous offer of judgment.

### A.  The Economic Loss Stipulation is Binding

The stipulated economic loss represents the concrete medical and subrogation liens that the Plaintiffs are legally obligated to satisfy from any recovery. The Defendants' opposition to this truth does not provide a compelling legal reason why the economic loss stipulation—which the Third Circuit has held is binding on this Court–should be ignored. Id. Further, Defendants' erroneously suggests the jury was free to reject portions of the stipulated medical expenses, which is a fundamental misstatement of Pennsylvania and Federal law. As the Third Circuit held in *Waldorf*, a stipulation is a judicial admission that is binding on the court and withdraws a fact from issue. Id. The jury could not award a lesser number upon a finding of liability and causation. Molding the verdict is a correction of a clerical error, not an "additur."

Defendants' reliance on *Arnez v. TJX Cos.*, 644 Fed. Appx. 180 (3d Cir. 2016) is a legal non-sequitur. In *Arnez*, the Third Circuit addressed whether a jury's failure to award pain and suffering damages—despite awarding some medical expenses—was against the weight of the evidence. That case is entirely distinguishable from the matter presently before this Court. *Arnez* focuses on a jury's right to weigh evidence and credibility regarding non-economic damages. This stands in stark contrast to the present case, where the jury answered "Yes" to causation, accepting that the Defendants caused the injuries.

Defendants further rely on cases like *Frank C. Pollara Group, LLC v. Ocean View Inv. Holding, LLC, 784 F.3d 177, 191, 62 V.I. 758 (3d Cir. 2015)* to argue waiver; however, those cases address inconsistent verdicts where the jury's logic was unclear. Here, there is no

inconsistency, only a mathematical omission. Because the Defendants entered into a binding stipulation as to the amount of economic losses, and the jury found liability and causation, the Court must mold the verdict to correct the ministerial error. One cannot waive a fact that was never an issue for the jury. After the jury found liability and causation, they could not depart from the stipulated economic damages.

The jury's award for past economic and medical loss constitutes a remediable mathematical error. Because the parties entered into a binding stipulation for $341,402.37 in past economic/medical costs and $81,622.50 in past mental health treatment, these figures became liquidated amounts. <u>These are merely bills that must be repaid.</u> By answering 'Yes' to causation (Verdict Questions 14 and 16), and the jury's finding of liability triggered a mandatory application of these stipulated sums. Accordingly, Plaintiffs move for judgment as a matter of law pursuant to Rule 50(b) to mold the verdict to include the full $423,024.87 for past economic expenses, resulting in an adjusted total verdict of $715,658.87.

### III.    DELAY DAMAGES ACCRUE FROM THE DATE OF SERVICE

The Defendants' challenge to the delay damage start date is factually and legally baseless. Under Pa. R.C.P. 238, the clock starts one year after the original process was first served. Exhibit A (Affidavit of Service) proves that service was perfected on March 5, 2021. Any internal corporate distinction Garware seeks to draw between its subsidiaries and agents for the purpose of service is irrelevant where service was legally accepted and the Defendants thereafter appeared and litigated for five years.

The Defendants' opposition to delay damages ignores the well-settled principle that such damages are not discretionary; they are a mandatory extension of compensatory damages. In *Costa v. Lauderdale Beach Hotel*, 626 A.2d 568 (Pa. 1993) the Pennsylvania Supreme Court

clarified that delay damages under Rule 238 are not punitive, but are intended to make the Plaintiff whole. The Defendants' suggestion that the Court has discretion to deny these damages is a misstatement of the law. As *Costa* establishes, the accrual of these damages is an entitlement of law. Once this Honorable Court molds the verdict to reflect the parties' binding stipulations, Plaintiff respectfully requests delay damages from March 5, 2021—the date service was perfected—through the date of the verdict. A finding to the contrary ignores the mandatory language of Rule 238 and deprives the Plaintiffs of the full compensatory relief required by law.

### IV.    THE JUDGMENT FINALLY OBTAINED MUST INCLUDE ALL RELIEF

As previously stated, the Plaintiffs have no intention to violate the Court's March 19, 2026 Order and greatly appreciate the Court's direction throughout the course of this matter. The inclusion of costs within the Omnibus motion is in the spirit of the Order which required all filings be within one omnibus motion, which includes Plaintiffs' position regarding the taxation of costs being included within the 'Judgment Finally Obtained'.

It is not Plaintiff's intent to run afoul of the Court's Order, but to ensure we are timely including what must be submitted within 14 days pursuant to Federal Rule of Civil Procedure 54(d)(1). The goal was to file what needed to be filed herein in keeping with Plaintiff Counsel's zealous advocacy and genuineness. Finally, Defendant's attempt to characterize the inclusion of costs and delay damages as inflation ignores the mandate of *Marryshow v. Flynn*, 986 F.2d 689 (4th Cir. 1993), which is standardly followed in this District. The "Judgment Finally Obtained" is the sum total of the molded principal, delay damages, and taxable costs. As calculated in Plaintiffs' Omnibus Motion, that total is $958,147.50, which exceeds the Rule 68 offer.

V.    CONCLUSION

The Defendants seek to define this case by the clerical growing pains of an evolving legal profession, using minor technical discrepancies to obscure the substantive merits of the case. This litigation has never been about the perfect citation; in fact, there is no precedent for a product liability claim for a defective athletic net. Only through the pursuit of justice for Corey and Lori Twigg, ***there is now***. Plaintiffs did not gamble on a verdict; they relied on the integrity of the executed economic loss stipulation because they believed if they won in this Honorable Court of law, a promise made in a stipulation was a promise kept.

Justice should not be a casualty of a resource disparity or minor procedural oversights Plaintiff tried to correct. Plaintiff's counsel will accept the ire of the Defendants, and if required by this Honorable Court, if it results in Corey and Lori Twigg receiving the finality of a judgment that reflects their true damages after waiting six years–a judgment that must include the stipulated economic losses. Plaintiffs respectfully request this Honorable Court look past the procedural distractions and enter a judgment that honors the law, the stipulations, and the fundamental fairness this case deserves. A total judgment of **$958,147.50** is not merely a mathematical necessity; but rather the just conclusion to a long-fought battle.

For the reasons set forth above, and those in the Omnibus Motion, Plaintiffs respectfully request that this Court grant the relief sought; specifically, 1) molding the verdict, 2) awarding delay damages, and 3) the taxation of costs; or in the alternative, granting Plaintiffs' motion for a new trial on all damages only.

Respectfully submitted,

**N.W. MATTIACCI LAW, LLC**

BY: */s/ Nicholas W. Mattiacci*

Nicholas W. Mattiacci, Esq., L.L.M.
804 West Avenue
Jenkintown, PA 19046
(215) 690-4201 (office)
(267) 202-5452 (facsimile)
 E-mail: nwm@mattilaw.com
Attorney for Plaintiffs

Date: April 21 , 2026.