**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COREY TWIGG, *et al.*, | | No. 4:23-CV-00067 |
| Plaintiffs, | | (Chief Judge Brann) |
| v. | | |
| BSN SPORTS, INC. *et al.*, | | |
| Defendants. | | |

**MEMORANDUM OPINION**

**MAY 21, 2026**

"Litigation is fraught with risk and uncertainty."[1] All three parties currently part of this case undertook the risk and chose to proceed to trial. Following a six-day jury trial, Plaintiffs filed an omnibus motion seeking various forms of post-trial relief.[2] Defendants have since filed various answers and briefs in opposition to that motion,[3] and as a result, the omnibus motion is now ripe for disposition. While it appears that both parties have a great deal more to say on the issues raised in the omnibus motion and various other indiscretions of counsel, at some point "[e]verybody, soon or late, sits down to a banquet of consequences."[4] That time has arrived for the parties in this case.

---

[1]  *Holmes v. Am. HomePatient, Inc.*, No. 4:21-CV-01683, 2024 WL 4112654, at *1 (M.D. Pa. Sept. 6, 2024) (Brann, C.J.).

[2]  *See* Doc. 217. The Court ordered Plaintiff to combine these arguments into a single omnibus motion, and they have done so. *See* Doc. 216.

[3]  *See* Docs. 221-24.

[4]  *Holmes*, 2024 WL 4112654, at *1 (quoting Robert Louis Stevenson).

## I.    PROCEDURAL HISTORY

On March 2, 2026, all parties were present, and a jury was seated to decide this case. As is the case in any trial, there were bumps along the way. The Court's disposition of all objections and problems that arose were all made on the record and can be located there. But one specific issue is relevant to these motions and bears further explanation. At the jury charge conference — a multiple hour, on the record affair, where every line of the jury instructions was reviewed by the parties and objected to as the parties saw fit — Plaintiffs' Counsel, Nicholas W. Mattiacci ("Mr. Mattiacci"), raised a stipulation issue. He noted that before trial commenced, the parties had agreed to a partial damages stipulation that fixed amounts for past medical and economic damages in this case. By the time that this stipulation was brought to the Court's attention, both parties had rested, with the stipulation not entered as evidence nor referenced to the jury. Despite this, and over the objections of both Defendants, the Court ordered that the stipulation would be entered into evidence and read to the jury.[5]

After a six-day trial, that jury returned a verdict in favor of Corey Twigg.[6] The two Defendants that remained at the end of the trial, BSN Sports, Inc. and Garware

---

[5]    *See* Doc. 203. To limit, and hopefully avoid, prejudice to the Defendants, the Court provided a limiting instruction before the stipulation was read to the jury, after it was read to the jury, and as a part of the jury instructions.
[6]    *See* Doc. 208.

Technical Fibers, LTD,[7] were found strictly liable for Mr. Twigg's injuries on design defect and failure to warn theories.[8] The jury also found them liable under a negligence theory.[9] However, the jury also found that Mr. Twigg was negligent and a factual cause of his injuries.[10] This led the jury to "assign a percentage of causal fault attributable to each party" and find that (1) Mr. Twigg was 40% responsible, (2) BSN Sports was 40% responsible, and (3) Garware was 20% responsible.[11] No punitive damages were awarded.[12] Finally, the jury chose to award Lori Twigg zero dollars on her loss of consortium claim.[13]

Ultimately, the jury awarded Mr. Twigg compensatory damages totaling $292,634.[14] Those damages were broken down on the jury verdict as follows: (1) $48,973 was awarded in past medical expenses, (2) $22,000 was awarded in future medical expenses, (3) $21,661 was awarded in past and future wage loss or damages related to loss in economic capacity, and (4) $200,000 was awarded in non-economic loss damages—specifically for pain and suffering and disfigurement.[15]

---

[7]  *See* Doc. 202.
[8]  Doc. 208, at 1-7.
[9]  *See id.* at 8. This included a finding that each Defendant's negligence was a factual cause of Mr. Twigg's injuries. *See id.* ¶¶ 14, 16.
[10]  *See id.* ¶¶ 17-18.
[11]  *See id.* ¶ 19.
[12]  *See id.* at 12-13.
[13]  *Id.* ¶ 21.
[14]  Doc. 208, at 11.
[15]  *Id.*

Less than twenty-four hours after the jury's verdict was rendered and judgment entered in Mr. Twigg's favor, Mr. Mattiacci filed a first motion for post-trial relief, along with a brief in support of it.[16] That motion was later amended,[17] and an additional motion for taxation of costs was filed.[18] Because of the disjointed approach to the various post-trial issues raised, the Court then ordered the three post-trial filings to be stricken and for Mr. Mattiacci to file one omnibus motion addressing all post-trial issues.[19] As part of that order, the Court stated that "Plaintiffs may file a bill of costs *only* 30 days after a decision is entered on all post-trial motions."[20] Mr. Mattiacci filed a new comprehensive motion on April 2, 2026 that included a bill of costs and made arguments relating to that bill of costs, "molding" the jury verdict, and requesting a new trial.[21] In response, both Defendants filed several answers and briefs opposing this motion.[22] Finally, Mr. Mattiacci filed a

---

[16]  *See* Docs. 211-12.
[17]  *See* Doc. 213.
[18]  *See* Doc. 215.
[19]  *See* Doc. 216.
[20]  *Id.* at 3 (emphasis added).
[21]  *See* Doc. 217.
[22]  *See* Docs. 221-24. Additionally, Garware filed a motion for leave to file a sur-reply to this motion, with said sur-reply attached to the filing. *See* Doc. 229. That motion will be granted. As such, I have considered the sur-reply in this analysis and will consider it in further considerations of arguments made in Plaintiffs' omnibus motion. Following that sur-reply, came a further response by Mr. Mattiacci. *See* Doc 230. This filing will not be considered by the Court. In my March 19, 2026 Order, I made clear that "both parties are expected to strictly comply with … the Federal Rules of Civil Procedure[] and the United States District Court for the Middle District of Pennsylvania Rules of Court." Doc. 216, at 2. "Local Rule 7.7 provides that no further briefs beyond a reply brief may be filed without leave of court." *Wolff v. Aetna Life Ins. Co.*, No. 4:19-CV-01596, 2020 WL 13822560, at *2 (M.D. Pa. Mar. 18, 2020) (Brann, C.J.). Plaintiffs did not seek leave to file this further response, and as such the filing of this reply is in violation of Rule 7.7. The Court was not prevaricating when it stated that all parties

motion to amend his brief in support of the omnibus motion,[23] and BSN Sports filed a response to this motion.[24]

## II.    ANALYSIS

Plaintiffs' omnibus motion raises four issues related to post-trial relief: (1) whether the verdict should be "molded" to account for a trial stipulation of certain damages, (2) the applicability of delay damages, (3) entitlement to a taxation of costs, and (4) an alternative entitlement to a new trial.[25] However, an additional issue has been raised in responsive briefing to this motion: the correctness—and in some cases existence—of citations in briefing by Mr. Mattiacci and the use of artificial intelligence in creating that briefing.[26]

As will become apparent in the coming pages, there are severe case citation issues in Plaintiffs' brief in support of this motion. To best achieve a judicious adjudication of this case, I have not allowed those errors to color what may be meritorious arguments raised by the Plaintiffs. However, the usage of what appears to be artificial intelligence in the brief has made it difficult for the Court to understand Plaintiffs' legal contentions or what those contentions are based on. Nevertheless, this opinion will address each of the arguments raised and give them

---

must strictly follow the federal and local rules. As a result, the Court will not review this response and will not consider it in its analysis of these post-trial issues.

[23]    *See* Doc. 227.
[24]    *See* Doc. 228.
[25]    *See* Doc. 218, at 5.
[26]    *See* Doc. 222, at 5-7; Doc. 224, at 1-2.

due consideration. Once these issues are analyzed, I will then address the alleged misconduct of Plaintiffs' counsel.

### A.    Motion for a New Trial

The final argument raised in Plaintiffs' omnibus motion is the first that will be addressed here. Plaintiff makes two arguments, in the alternative to his other assertions, that a new trial on damages is warranted under Federal Rule of Civil Procedure Rule 59(a). [27]

"On motion after a jury trial, a court may 'grant a new trial ... for any reason for which a new trial has heretofore been granted in an action at law in federal court.'"[28] "But 'it should do so only when the great weight of the evidence cuts against the verdict and ... a miscarriage of justice would result if the verdict were to stand.'"[29] ""Alternatively, a new trial may be ordered 'where the verdict, on the record, cries out to be overturned or shocks [the Court's] conscience.'"[30] Finally, "when a court evaluates a challenge to the weight of the evidence[,] it does not view the evidence in the light most favorable to the verdict winner, but instead exercises its own judgment in assessing the evidence."[31]

---

[27]  Doc. 217, at 5.

[28]  *Repa v. Napierkowski*, No. 22-2537, 2023 WL 3034603, at *2-3 (3d Cir. Apr. 21, 2023) (quoting Fed. R. Civ. P. 59(a)(1)(A)).

[29]  *Id.* (quoting *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016)).

[30]  *Holmes v. Am. HomePatient, Inc.*, No. 4:21-CV-01683, 2024 WL 4112654, at *10 (M.D. Pa. Sept. 6, 2024) (Brann, C.J.) (quoting *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 128 (3d Cir. 2003)).

[31]  *Marra v. Phila. House. Auth.*, 497 F.3d 286, 309 n.18 (3d Cir. 2007).

For the reasons that follow, it is clear that neither of Plaintiffs' arguments warrants a new trial under Rule 59.

### 1.    Non-Economic Loss and Loss of Consortium

First, Plaintiffs assert that a new trial should be awarded "because the jury's awards for non-economic loss and loss of consortium are grossly inadequate and shock the judicial conscience."[32] They claim that "[t]he jury's failure to award damages for loss of consortium, combined with a nominal award for permanent and catastrophic injuries, indicates a fundamental breakdown in the deliberative process that requires a new trial."[33]

"In diversity cases in which state law 'governs the claims for relief,' state law also 'suppl[ies] the test for federal-court review of the size of the verdict.'"[34] "Under Pennsylvania law, which supplies the applicable standard for use in making a Rule 59(a) determination in this case, [a] trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice."[35] "A damages award 'shocks the conscience' if it simply is not reasonable and bears

---

[32]  Doc. 217 ¶ 17.
[33]  *Id.* ¶ 18.
[34]  *Tax Matrix Techs., LLC v. Wegmans Food Markets, Inc.*, No. CV 13-6223, 2017 WL 1397218, at *1 (E.D. Pa. Apr. 19, 2017) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426 (1996)), *aff'd*, 736 F. App'x 326 (3d Cir. 2018).
[35]  *Id.* at *2 (quoting *Neison v. Hines*, 653 A.2d 634, 636 (Pa. 1995)) (internal quotation marks omitted).

no rational relationship to the evidence presented at trial."[36] But "[t]he mere fact that a verdict is low does not mean that it is inadequate."[37]

While Plaintiffs base this argument on their belief that a jury award of more than $200,000 is "nominal," the Court patently disagrees.[38] Further, this damages amount does not shock the conscience. While Plaintiffs and their counsel may see this amount as small, this six-figure verdict came after a lengthy trial that saw very little evidence set forward by Plaintiffs on the critical issue of damages.[39] The jury evaluated the evidence and awarded a sum consistent with what they believed was just. There is absolutely no evidence that the jury acted with any passion, prejudice, or partiality.[40] In sum, the Plaintiffs' belief that the amount is too low is an insufficient reason to order a new trial on damages.

The only other reason proffered by Plaintiffs for the verdict shocking the conscience is the failure to award Mrs. Twigg any damages for her loss of consortium claim. "An action for loss of consortium is a derivative under

---

[36]  *Id.* at *2 (quoting *Davis v. Steigerwalt*, 822 A.2d 22, 28 (Pa. Super. Ct. 2003)) (internal quotation marks omitted); *see also Kiser v. Schulte,* 648 A.2d 1, 4 (1994) ("A jury verdict is set aside ... when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff").

[37]  *Elza v. Chovan*, 152 A.2d 238, 240 (Pa. 1959).

[38]  *See* Doc. 218, at 11.

[39]  Additionally, the Court can recall no evidence set forth at trial that showed that the amount awarded by the jury was grossly disproportionate.

[40]  *Elza*, 152 A.2d at 240.

Pennsylvania law."[41] However, the Commonwealth of Pennsylvania has no requirement that a jury award any damages on such a claim, even if the predicate claim was successful.[42] That is no less true in a case of significant or catastrophic injury.[43] As a result, there is logically no inconsistency, and no error, in a finding of liability on a claim and awarding no damages for the derivative loss of consortium claim. As a result, this also does not provide a reason for conducting a new damages trial.

Overall, the Plaintiffs have not shown—nor does the Court believe—that the jury's verdict has shocked the judicial conscience. Rather, there was a good deal of evidence adduced at the trial that could support the award that was given.[44] That is all that is needed to defeat the present motion for a new trial.[45] "There is no magic in amounts but only in the circumstances, and compromise verdicts are both expected and allowed."[46] It is possible that this is what happened in this case. So,

---

[41] *Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 437 (E.D. Pa. 2010) (citing *Scattaregia v. Wu*, 495 A.2d 552, 553 (Pa. Super. Ct. 1985)).

[42] *See, e.g.*, *Snyder v. Halsey*, No. 05-13134, 2010 WL 7369680 (Pa. Com. Pl. Nov. 22, 2010).

[43] Plaintiffs' citation to *Neison v. Hines*, 653 A.2d 634 (Pa. 1995), is entirely unhelpful. *See* Doc. 218, at 12. Aside from the fact that this case does not hold anything similar to what they claim it does, this case only refers to loss of consortium claims in passing. Instead, the Plaintiffs seem to fundamentally misunderstand what a loss of consortium claim truly is. I will not undertake in this opinion to describe the derivative nature of such a claim, and I will only say that Plaintiffs' legal assertions surrounding this issue are wholly unsupported by the case law they cite and any other Pennsylvania jurisprudence that this Court has read.

[44] For a discussion of some of that evidence *see* Doc. 224, at 11-12.

[45] *See Neison*, 653 A.2d at 636 (quoting *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994)).

[46] *Elza*, 152 A.2d at 240.

9

while Plaintiffs may believe that the ultimate award is low, that alone is not sufficient to displace the verdict that the jury made.

### 2. Workers Compensation Instruction

Next, Plaintiffs aver that "the Court's failure to provide a limiting instruction regarding workers' compensation" is a sufficient basis to award a new trial for damages.[47] A "district court's latitude on a new trial motion is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court."[48] Whether to give a specific jury instruction is one of the aspects of a trial that rests within the discretion of the court.[49]

However, under the Federal Rules of Civil Procedure and Third Circuit jurisprudence, for an objection to be preserved on jury instructions there is a "requirement that a party object to a jury instruction or the court's failure to instruct the jury on a given issue before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." [50]

Here, Plaintiffs never requested that the jury be instructed on anything related to workers' compensation. They did not include a proposed jury instruction on the

---

[47] Doc. 217 ¶ 19.

[48] *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993).

[49] *See United States v. McDade*, 404 F. App'x 681, 684 (3d Cir. 2010) ("The district court has wide discretion in charging the jury").

[50] *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1082 (3d Cir. 1991) (citing Fed. R .Civ. P. 51;) (internal quotation marks omitted); *see also Stainton v. Tarantino*, 637 F. Supp. 1051 (E.D. Pa. 1986) ("Parties may not assign as error the failure to give an instruction unless they object to such failure before the jurors retire to consider their verdict.").

issue in their initial proposal for jury charges.[51] And they did not object to the omission of a worker's compensation instruction at the jury charge conference, or after the jury was charged—when the Court gave the parties a final chance to object before sending the jury to deliberate. Therefore, Plaintiffs have waived this argument for the purpose of post-trial motions.[52] Because of this and the Court's belief that "[t]his is not a situation where there was 'fundamental' error in a charge which was 'highly prejudicial' and failure to rectify the error 'would result in a gross miscarriage of justice,'" a new trial will not be granted based on the lack of this instruction.[53]

---

[51] *See* Doc. 178.

[52] *See Montgomery Cnty. v. Microvote Corp.*, No. 97-6331, 2001 WL 722150, at *4 (E.D. Pa. June 25, 2001) ("When a defendant fails to submit a jury interrogatory or instruction, or fails to object to the absence of one, it waives the issue for post-trial motions or appeal") (citing *Bauder v. Philadelphia, Bethlehem & New England R.R. Co.,* No. 96-7188, 1998 WL 633651, at *5-6 (E.D.Pa. Aug.28, 1998), *aff'd,* 189 F.3d 463 (3d Cir.1999)).

[53] *Harkins v. Ford Motor Co.*, 437 F.2d 276, 278 (3d Cir. 1970) (quoting *McNello v. John B. Kelly, Inc.*, 283 F.2d 96 (3d Cir. 1960)). Plaintiffs' argument that "references to workers' compensation benefits allowed the jury to speculate on collateral recovery" is wholly unsupported by the record and the case law they cite. *See* Doc. 118, at 13 ("the introduction of such evidence is 'narcotic' in its effect on a jury, and once the 'poison' of collateral recovery is injected into the minds of the jurors, nothing short of a new trial can purge the prejudice"). The errata sheet "fix" for these citations does not render these citations more useful. *See* Doc. 227. The Court can find no support for Plaintiffs' legal argument and believes the correct standard is whether "there was 'fundamental' error in a charge which was 'highly prejudicial' and failure to rectify the error 'would result in a gross miscarriage of justice.'" *Harkins*, 437 F.2d at 278. There were scant references to workers compensation throughout the trial, if any, and a review of the exhibit lists shows no admitted exhibit referencing workers compensation. *See* Docs 205-06. This is to say, there was little if any collateral source evidence introduced and certainly an insufficient amount and quality to qualify as highly prejudicial or causing a gross miscarriage of justice. *See Harkins*, 437 F.2d at 278.

### B.    Comparative Negligence

In Plaintiffs' argument supporting their motion for a new trial under Rule 59, Plaintiffs include an assertion under a different rule entirely. They state in altogether conclusory language that the Court should "vacate the 40% comparative negligence apportionment in its entirety as a matter of law pursuant to Rule 50(b)."[54] This argument serves to renew their denied motion for judgment as a matter of law.

"A grant of judgment as a matter of law is appropriate 'where a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'"[55] The United States Court of Appeals for the Third Circuit has expounded on this standard by directing that "[s]uch a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."[56]

What Plaintiffs' argument boils down to is the belief that the jury's finding that Mr. Twigg was negligent is inconsistent with the jury's findings that Mr. Twigg did not use the product in an unforeseeable or unintended way and that he did not

---

[54]    Doc. 217 ¶ 20.
[55]    *Levy v. Schmidt*, 573 F. App'x 98, 101 (3d Cir. 2014) (quoting Fed. R. Civ. P. 50(a)(1)).
[56]    *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

have knowledge of the danger of the defect in the product.[57] The Court rejects this argument. As the Supreme Court of Pennsylvania has held, "negligence does not bar recovery under the theory of strict liability."[58]

An example may prove illustrative here to further show that a finding of foreseeable use and lack of knowledge of the dangers of a defect does not mean a person cannot be negligent. Say there is a man driving a car that has a faulty gasket in its engine that he is unaware of. If he were to drive the car on the interstate, he would be using the car in a foreseeable way and would have no knowledge of the dangers of the faulty gasket. However, these facts alone tell us nothing about the care used by the driver; that is, it tells us nothing of his negligence. If the driver was driving the car while wearing a blindfold, we would all agree he was being negligent. But he would still be operating the car in a foreseeable way and have no knowledge of the faulty gasket.

While this example is not wholly analogous to the case at hand, it at least illustrates the logical fallacy in Plaintiffs' assertion that the jury's finding on foreseeable use and knowledge of the dangers of a defect must lead to a finding that Mr. Twigg was not negligent. The findings are entirely independent, with the former

---

[57] Despite this argument being based on alleged inconsistency, Plaintiffs argue that there is, in fact, no inconsistency in a separate section of wtheir reply brief. *See* Doc. 225, at 5-6.

[58] *Jacob Kline Cooperage, Inc. v. George W. Kistler, Inc.*, 428 A.2d 583, 586 (Pa. 1981); *see also DiFrancesco v. Excam, Inc.*, 642 A.2d 529, 547 (Pa. 1994) ("Even if appellee was negligent, he cannot be precluded from recovery in a strict liability case").

relating solely to strict liability.[59] In this case the jury found that Mr. Twigg was using the product in a foreseeable way, that he had no knowledge of the dangers of the defects in it, and that he still bore some responsibility for his injuries on the basis of negligence. As Defendants have adequately established, there was a plethora of evidence to allow a jury to reasonably find each of these to be true.[60] As such, the motion for renewed judgment as a matter of law on this point must fail.[61]

In this case, Plaintiffs brought both strict liability and negligence claims. Pennsylvania statute explicitly makes the comparative negligence of the Plaintiff a relevant issue in negligence actions.[62] The entirety of Plaintiffs' argument on this issue appears to be an implicit admission of regret for bringing a negligence claim in the first instance.[63] Had they not, a comparative negligence question would not

---

[59]  Plaintiffs' argument that "[u]nder Pennsylvania law, a user has no duty to perform destructive inspections of safety equipment to identify concealed design failures; therefore, the jury's findings preclude a finding of negligence as a matter of law" is supported by no case law cited in Plaintiffs' brief or any that the Court can find. *See* Doc. 117 As a result, the Court does not believe it is due any weight. Further, the Plaintiffs appear to conflate the negligence and strict liability standards at issue here. While Mr. Twigg's negligence is surely irrelevant to the strict liability claims brought, it is wholly relevant to the negligence claim. In this case, there were two separate inquires that the jury appears to have had no issue delineating between.

[60]  *See* Doc. 224, at 12 ("comparative negligence finding was wholly supported by the evidence, which demonstrated that the net Collegiate L Screen with Hood was damaged prior to March 10, 2019, that someone had attempted to repair that damage with zip ties, and that Corey Twigg chose to use the damaged net anyway").

[61]  *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

[62]  *See* 42 Pa. Cons. Stat. § 7102.

[63]  The Court made explicit in its ruling on summary judgment and on motions in limine that the negligence claim had not been abandoned. *See* Doc. 117, at 45; Doc. 186, at 7. A "plaintiff is the master of the complaint" and can choose which claims to bring or dismiss. *See Burns v. Femiani*, 786 Fed. App'x 375, 378 (3d Cir. 2019). Here Plaintiffs brought a negligence claim, and they cannot now complain that the jury decided that claim because they did not dismiss it before that verdict was rendered.

14

have been asked on the jury verdict slip. But they did bring a negligence claim. Therefore, the jury had a right to make a ruling on every part of that negligence claim—including comparative negligence. The Court will not disturb that decision.

## C.    Molding the Verdict

The most contentious issue that remains alive in this matter is the issue of molding the jury's verdict. After the six-day trial concluded, the jury entered a verdict for $292,634, as noted above.[64] This included awarding $48,973 in past medical expenses and $21,661 in past and future wage loss or damages related to loss in economic capacity.[65] However, despite this substantial award, Plaintiffs have argued that it is at odds with the aforementioned damages stipulation that was admitted into evidence and that judgment as a matter of law is appropriate under Rule 50(b).[66]

Plaintiffs have brought this motion under the wrong rule of the Federal Rules of Civil Procedure. Rule 59(b) sets out a process for requesting a new trial.[67] Plaintiffs are not seeking a new trial based on this "issue."[68] Rather, they claim that the "award is a mathematical error that this Court must correct."[69] This sentiment

---

[64]    Doc. 208, at 11.
[65]    *Id.*
[66]    *See* Doc. 218, at 6-7.
[67]    *See* Fed. R. Civ. P. 59(b).
[68]    To the extent they bring such a motion under Rule 59(b), it would be denied because the Court cannot say "that there is insufficient evidence for permitting a different finding." *Gatenby v. Altoona Aviation Co.*, 407 F.2d 443, 446 (3d Cir. 1968).
[69]    *See* Doc. 218, at 7.

appears to raise a motion to amend the judgment, which would properly be raised under Rule 59(e).[70]

"A proper motion to alter or amend judgment must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice."[71] Plaintiffs proceed through an implicit argument that there is a need to correct a clear error of law.[72] As the moving party, they bear the burden "of establishing the circumstances warranting relief from a final judgment."[73]

Plaintiffs have failed to meet their burden. Plaintiffs cite a grand total of one case to support their arguments on this issue.[74] That case is cited to support a quotation that does not appear in the text of that opinion and for a proposition that the case does not support.[75] This proposition is essentially that "[a] stipulation constitutes a judicial admission that removes the stipulated fact from the jury's

---

[70]  The Court will construe this aspect of this motion as brought under Rule 59(e) to avoid penalizing the Plaintiffs for their counsel's inability to correctly identify the proper legal standard for such a motion.

[71]  *Holsworth v. Berg*, 322 F. App'x 143, 146 (3d Cir. 2009) (quoting *N. River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995)) (internal citations omitted).

[72]  *See* Doc. 218, at 6-7.

[73]  *Milhouse v. Ebbert*, No. 1:16-CV-00239, 2016 WL 3269115, at *2 n.3 (M.D. Pa. June 15, 2016); *see also In re Mushroom Direct Purchaser Antitrust Litig.*, 54 F. Supp. 3d 382, 386 (E.D. Pa. 2014).

[74]  *See* Doc. 218, at 6 (citing *Tyler v. King*, 496 A.2d 16 (Pa. Super. Ct. 1985)). They add a second case in their reply brief. *See* Doc. 225, at 4 (citing *Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998)). But that case is similarly unhelpful and does not support Plaintiffs' assertions.

[75]  *See Tyler v. King*, 496 A.2d 16 (Pa. Super. Ct. 1985).

province."[76] That statement is assuredly true.[77] But, Plaintiffs attempt to use this fact

to also assert that "by finding the Defendants' conduct was a factual cause of the

Plaintiffs' injuries, the jury was legally bound to accept the stipulated economic

damages."[78] This argument is precluded by the wording of the parties' stipulation,

itself. That wording states, in its entirety:

> The parties, by and through their respective counsel, hereby stipulate and agree to the following facts, which shall be admitted into evidence and viewed as proven for the purposes of this trial:
>
> 1. Fixed Past Economic Expenses: The medical expenses incurred for the diagnosis and treatment of Corey Twigg's physical injuries and past economic costs from March 10, 2019, through January, 2024, total $341,402.37.
>
> 2. Past Medical Expenses (Mental Behavioral Health): Corey Twigg has incurred medical expenses for mental behavioral health treatment from June 2022 through January 2024, totalling [sic] $81,622.50. The parties agree that this amount accurately reflects the cost of services rendered; however, the Defendants expressly reserve their right to contest whether this treatment was approximately [sic] caused by the incident of March 10, 2019.

The Third Circuit has definitively stated that "[c]ompensatory damages are

intended to redress the concrete loss that the plaintiff has suffered by reason of the

---

[76]  Doc. 218, at 6.

[77]  *See, e.g.*, *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 677-78 (2010) ("formal concessions ... that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."); *Coldwell Banker Real Est., LLC v. Bellmarc Grp. LLC*, No. CV 14-7926, 2021 WL 4129492, at *5 n.10 (D.N.J. Sept. 9, 2021), *aff'd*, No. 21-2862, 2022 WL 3644183 (3d Cir. Aug. 24, 2022)

[78]  Doc. 218, at 6.

defendant's wrongful conduct."[79] That is to say, that "compensatory damages must be grounded in the actual injury suffered by the plaintiff as a result of the defendant's actions."[80] Therefore, "[u]nder Pennsylvania law, to recover damages in a contract or tort action, the plaintiff must prove the damages were proximately caused by the defendant's conduct."[81]

Despite Plaintiffs' ardent beliefs, the stipulation does not establish the proximate causation — or any causation — necessary to require that the damages total be automatically awarded upon a finding of the defendants' liability. Notably, the first stipulation only establishes that there was a total amount of $341,402.37 suffered in damages by Mr. Twigg over a certain period of time. It makes no reference to the inception or cause of these damages and includes no language even connecting the stipulated damages amounts to the incident at issue in this trial. The second part of the stipulation is explicitly clear that the defendants were expressly reserving the right to contest whether mental behavioral health damages were caused by the relevant incident. For all of these damages — past medical expenses, economic loss, and mental behavior health — the causation issue remained open at trial. Therefore, the jury must have decided that some of the damages amounts in the

---

[79] *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 357 (3d Cir. 2015) (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,* 532 U.S. 424, 432 (2001)) (internal quotation marks omitted).

[80] *Brooks v. Andolina*, 826 F.2d 1266, 1269 (3d Cir. 1987).

[81] *Kotsur v. Goodman Glob., Inc.*, No. CV 14-1147, 2016 WL 4430609, at *6 (E.D. Pa. Aug. 22, 2016) (citing *Nat'l Control Corp. v. Nat'l Semiconductor Corp.*, 833 F.2d 491, 496 (3d Cir. 1987)).

stipulation were caused by the Defendants' misconduct, and some were not. The evidence at trial was mixed on this issue, and it was certainly sufficient to support such a finding.

The import of the omission of causation or reference to this specific injury in the stipulation is that there was no fact established that said "if Defendants were found to be liable, these would be the damages amounts."[82]  Plaintiffs' error here is their "assessment" that causation had been established for these damages.[83]  In reality, there was no mention of causation related in the stipulation, so no causation related to the relevant incident could have been established by it. The jury was free to decide for itself whether the damages amounts were caused by the defendant's misconduct, and the stipulation does not remove that question from the jury by establishing causation. Therefore, to the extent Plaintiffs are arguing that the Court failed to apply a stipulation saying "if Defendants were found to be liable, these would be the damages amounts," such a stipulation was not filed in this matter and

---

[82]  Importantly, even if such a stipulation had been entered into, it is entirely unclear whether such a stipulation would have required the jury to award all of these stipulated damages. *See Arnez v. TJX Companies, Inc.*, 644 F. App'x 180, 183 (3d Cir. 2016) (no further discussion of the jury's discarding of a similar stipulation other than the Court saying "[d]uring jury deliberations, the jury asked the District Court whether it had to award Appellants the entire stipulated amount of medical expenses, to which the District Court responded in the negative."); *Kindermann v. Cunningham*, 110 A.3d 191, 195 (Pa. Super. Ct. 2015) ("The trial court concluded that the jury in this case compromised its verdict, a finding that is amply supported by the record, and we defer to the trial court's assessment. . . . The conciliation is only more evident because the verdict was less than the stipulated economic loss. . . . On these facts, a new trial limited to damages is unfair.")

[83]  Doc. 225, at 4.

there can be no clear legal error for the failure of either the Court or the jury to apply a stipulation that does not exist.

It is apparent to the Court that the text of the damages stipulation may not comport with the intentions of the Plaintiffs. They have made clear in their briefing on the present motion that they believe this stipulation established a fact saying essentially, if Defendant's were found liable, the totals listed in the stipulation would be awarded by the jury.[84] That is textually not what the stipulation states. "A consensual stipulation of the parties is to be interpreted according to the general principles of contract construction."[85] Here, there is no ambiguity as to what the contract means, and it is not ambiguous. After all, any mention of causation or relation to this incident in the stipulation makes clear that the stipulation does not take that issue off the table for the upcoming trial. Further, "[a] contract is not ambiguous merely because the parties disagree about its proper interpretation."[86] That appears to be what happened in this case. Such a misunderstanding may indicate a poor stipulation negotiation by counsel, but does not create a legal error— let alone a clear one—sufficient to justify a post-trial modification of the jury verdict.

---

[84] *See* Doc. 225, at 4-5. It appears that Plaintiffs' counsel mistakenly believed that the stipulation removed the past medical and economic damages issues from the trial entirely. This would explain the utter lack of evidence proffered at trial on these issues.

[85] *USX Corp. v. Penn Cent. Corp.*, 130 F.3d 562, 566 (3d Cir. 1997) (quoting *Pittsburgh Terminal Corp. v. Baltimore & Ohio Railroad Co.,* 824 F.2d 249, 254 (3d Cir. 1987)) (internal quotation marks omitted).

[86] *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 210 (3d Cir. 2005).

The Court will be the first to admit that this section of the opinion may be opaque and a tad repetitive. The reason for this is because Plaintiffs' counsel filed a brief on this issue that is made up of legal arguments that are not supported by any form of case law. Further, the arguments in the briefing do not set forth a clear line of legal — or logical — reasoning that would allow the Court or Defendants to know exactly what Plaintiffs are contending. Instead, the Court has been forced to cobble together what it believes the Plaintiffs are arguing on this amendment or molding issue. In doing so, the Court has undertaken to address why any argument that it may have been attempting to set forth is unavailing.

In sum, the motion to amend or alter the verdict based on the damages stipulation is denied.[87]

### D.    Delay Damages

Plaintiffs also request that the Court "calculate and include mandatory delay damages under [Rule] 238 [of the Pennsylvania Rules of Civil Procedure], accruing from one year after the service of the complaint."[88] These delay damages are mandatory, and, unlike Plaintiffs' request to mold the verdict, do require an

---

[87]    As a final note on this issue, Plaintiffs proposed solution to what they believe is a mathematical error, is to add the entire amount of the stipulation to the existing jury original verdict. *See* Doc. 218, at 7. As Garware points out, "Plaintiffs would not be entitled to the amounts for past medical and economic losses set forth in the stipulation and the amounts awarded by the jury in lieu of the stipulation." Doc. 229, Ex. 1. Even if the stipulation had been a clear factual concession that those were the damages figures *for the Defendant's conduct related to this incident*, Garware would be correct, and Plaintiffs' solution would serve as a form of double counting to award more than Mr. Twigg suffered.

[88]    Doc. 217 ¶ 7.

amendment to the judgment.[89] All parties concede that delay damages are applicable in this case.[90] Further, they agree on the date that the delay damages began to accrue—March 5, 2022.[91] The only real disagreement among the parties is what date the delay damages stopped accruing.[92]

Rule 238 of the Pennsylvania Rules of Civil Procedure provides that "a defendant must pay delay damages unless the delay falls within the excludable time as set forth in the rule."[93] One of the excluded time periods for these additional damages is "after the defendant made a written offer" that satisfies certain requirements.[94] It is undisputed that such an offer was made in this case.[95] However,

---

[89]  *See* Pa. R. Civ P. 238(a)(1) ("At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay *shall* be added to the amount of compensatory damages…") (emphasis added).

[90]  Despite Plaintiffs' assertions that Defendants have argued that delay damages are wholly unavailable in this case, BSN Sports and Garware have stated nothing of the kind. Instead, they object to Plaintiffs' request for delay damages based on the ending date of their calculations and their usage of the molded verdict in those calculations. *See* Doc. 222, at 17; Doc. 224, at 7-8; Doc. 229, Ex. A ("Garware challenges only the ending date for delay damages in light of the Offer of Judgment").

[91]  This is the date of "one year after service of the Complaint." Doc. 222, at 17.

[92]  There is technically one other disagreement, that of the principal from which the damages are calculated. But because that principal will be the final value of the compensatory damages, this is essentially a re-hashing of the argument over whether to mold the verdict. As I previously found that the verdict will not be molded to include the sums in the stipulation, the principal amount for the purposes of delay damages calculations is the unchanged verdict award of $292,634.

[93]  *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 169 (3d Cir. 1995); *see also* Pa. R. Civ. P. 238. Rule 238 is "substantive in nature and therefore binding in this diversity action." *Patel v. Himalayan Int'l Inst. of Yoga Sci. & Phil. of the USA*, No. 3:CV-94-1118, 1999 WL 33747891, at *20 (M.D. Pa. Dec. 9, 1999) (citing *Fauber v. KEM Transportation & Equipment Co.,* 876 F.2d 327, 328 (3d Cir.1989)).

[94]  Pa. R. Civ. P. 238(b)(1).

[95]  Plaintiffs have admitted to the Court that such an offer was made and have made similar admissions in their briefs on this omnibus motion. *See* Doc. 225, at 7.

22

"Rule 238 makes clear that to qualify as a written offer that terminates the running of delay damages[,] the written offer must either be in effect for at least 90 days or until commencement of trial, whichever first occurs."[96] The offer made by the Defendants states that the "offer will be deemed withdrawn unless [Plaintiffs] serve a written notice of acceptance of the offer within *14 days* of the date that it was served on [them]."[97] The offer was made on February 13, 2026, and 14 days after this date is February 27, 2026.[98] This is several days before the trial was set to begin on March 2, 2026. "Because … the trial did not commence during those [14] days, the Offer of Judgment did not serve to terminate the running of delay damages under Rule 238."[99] Therefore, Plaintiffs will be entitled to delay damages on the final compensatory damages amount from March 5, 2022 through March 9, 2026—the date a verdict was handed down in this case.

Since I have already decided that the base compensatory amount of $292,634 in the jury verdict will not be amended, the process for calculating delay damages is simple. Rule 238 of the Pennsylvania Rules of Civil Procedure states that "[d]amages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of *The Wall Street Journal* published for each calendar year for

---

[96] *Patel*, 1999 WL 33747891, at *20; *see also* Pa. R. Civ. P. 238(b)(2).
[97] Doc. 220, Ex. 1 (emphasis added).
[98] *Id.*
[99] *Patel*, 1999 WL 33747891, at *20.

which the damages are awarded, plus one percent, not compounded."[100] *The Wall Street Journal*'s prime rate for the relevant years is as follows: (1) for 2022 the prime rate was 3.25%, (2) for 2023 the prime rate was 7.50%, (3) for 2024 the prime rate was 8.50%, (4) for 2025 the prime rate was 7.50%, and (5) for 2026 the prime rate was 6.75%.[101]

Utilizing these prime rates and the compensatory amount awarded by the jury of $292,634, allows for the calculation of delay damages per year as follows:[102]

| Year | Period | Prime Rate + 1% [103] | Calculation | Damages |
|---|---|---|---|---|
| **2022** | March 5 – December 31 [104] | 4.25% | 292,634 x .0425 x (302/365) | $10,290.29 |
| **2023** | January 1 – December 31 | 8.50% | 292,634 x .085 | $24,873.89 |
| **2024** | January 1 – December 31 | 9.50% | 292,634 x .095 | $27,800.23 |
| **2025** | January 1 – December 31 | 8.50% | 292,634 x .085 | $24,873.89 |
| **2026** | January 1 – March 9 [105] | 7.75% | 292,634 x .0775 x (68/365) | $4,225.15 |

---

[100] Pa. R. Civ. P. 238(a)(3).

[101] Pa. R. Civ. P. 238, Addendum to Explanatory Comment (2026).

[102] For cases that conduct similar calculations, *see UGI Sunbury LLC v. A Permanent Easement for 0.438 Acres*, No. 3:16-CV-0794, 2021 WL 5889724, at *10 (M.D. Pa. Dec. 13, 2021) (Brann, C.J.); *Estes Express Lines v. U.S.A. Lamp & Ballast Recycling, Inc.*, 745 F. Supp. 3d 206, 218-19 (W.D. Pa. 2024); *Hayek v. Pluto Transp., LLC.*, No. CV 24-4302, 2026 WL 402496, at *2 (E.D. Pa. Feb. 12, 2026).

[103] In calculations for these delay damages, one percent is added to each respect prime rate as instructed by the Pennsylvania Rules of Civil Procedure. Pa. R. Civ. P. 238(a)(3).

[104] There were 302 days between March 5, 2022 and December 31, 2022.

[105] There were 68 days between January 1, 2026 and March 9, 2026.

Adding these amounts together, the total amount of delay damages Plaintiffs are entitled to is $92,063.45. After adding the base compensatory damages, this means that the final judgment must be modified to the sum of $384,697.45.[106]

### E.    Bill of Costs

All three parties have filed bills of cost in this case.[107] Local Court Rule 54.3 sets out a specific procedure for how these bills are taxed.[108] While this process does not require judicial approval before these costs can be taxed, I will provide a brief comment on how I believe these filings will generally progress, without attending to the details of the actual figures.[109]

On February 13, 2026, the Defendants in this case made a $950,000 offer of judgment to Plaintiffs pursuant to Federal Rule of Civil Procedure 68.[110] This offer was not accepted by Plaintiffs, and I have found that the final judgment award is $384,697.45. Because this figure is not "more favorable than the amount in an unaccepted Rule 68 offer, the plaintiff may not recover costs incurred after the offer

---

[106] *See LaBarre v. Werner Enters., Inc.*, 420 F. App'x 169, 171 (3d Cir. 2011); *see also Fauber v. KEM Transp. & Equip. Co.*, 876 F.2d 327, 333 (3d Cir. 1989).

[107] *See* Doc. 217, Ex. G; Doc. 219; Doc. 220. The Court notes that Plaintiffs were ordered by this Court on March 19, 2026, to not file a bill of costs until "after a decision is entered on all post-trial motions." *See* Doc. 216. However, the Court acknowledges that the wording of that part of the Order was contradictory and confusing. Because of this, the Court will excuse Plaintiffs disobedience of this part of the Order and will allow their bill of costs to stand with their counterparts.

[108] *See* U.S. Dist. Ct. Rules M.D. Pa. Rule 54.3.

[109] *See In re: Chocolate Confectionary Antitrust Litig.*, No. 1935, 2015 WL 8536792, at 4* n.34 (M.D. Pa. Dec. 11, 2015).

[110] Doc. 220, Ex. 1.

was made."[111] This means that while Plaintiff is likely eligible to be awarded costs,[112] "plaintiffs must bear their own costs" for the time period after February 13, 2026.[113] Additionally, pursuant to Rule 68, the Defendants are "entitled to an award of costs incurred after the offer was made."[114] This means that Defendants' bills of costs are properly filed as well.

### F.    Mr. Mattiacci's Use of Artificial Intelligence

In Defendants' briefing on this omnibus motion, they have raised a troubling issue with Mr. Mattiacci's citations in his brief in support of this motion. They point out that he has cited cases that are fabricated, cited cases that are real but wholly unrelated to the issues they are proffered to support, and cited to quotations that do not appear in the text of those opinions.[115] After a lengthy review of the cases cited, the Court believes that not only are Defendants correct in their assertions that many of the citations in his brief are false or completely irrelevant, but there are additional citations to cases throughout this brief that do not remotely relate to the assertions advanced by Mr. Mattiacci.

Mr. Mattiacci responded to Defendants notation of these errors with vitriol, claiming that these fictitious citations were "clerical errors," "scrivener's error[s],"

---

[111] *Souryavong v. Lackawanna Cnty.*, 159 F. Supp. 3d 514, 519-20 (M.D. Pa. 2016), *aff'd*, 872 F.3d 122 (3d Cir. 2017).

[112] *See In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462-63 (3d Cir. 2000).

[113] *Souryavong*, 159 F. Supp. 3d at 520.

[114] *Lottotron, Inc. v. Peak Ent., N.V.*, No. CV 09-4942, 2011 WL 13238622, at *3 (D.N.J. July 11, 2011) (quoting Fed. R. Civ. P. 68(d)) (internal quotation marks omitted).

[115] *See* Doc. 222, at 5-7, 18; Doc. 224, at 1-2.

or "minor technical discrepancies."[116] He tacitly admitted that the errors were due to the use of artificial intelligence, but his statements in this reply fall far short of taking responsibility for these gross misstatements.[117] Instead he claimed that these errors "were … identified and mostly corrected," and stated that they were "a byproduct of a shifting landscape in the legal professional—not a lack of candor."[118] Despite claiming that they were corrected, eight days after the filing of his reply brief, Mr. Mattiacci filed a motion to amend his brief in support to include a sheet that attempted to further correct errors.[119] This errata sheet fixed one or two of the errors, but certainly not all that appear in his filing.

"The proliferation and availability of artificial intelligence ("AI") tools presents a challenge to the legal profession. Lawyers have duties both to their clients and to the courts to present accurate facts and citations to legal authority. When a lawyer presents false information to a court, that lawyer violates his duties."[120] "Even with recent advances, no reasonably competent attorney should out-source research and writing to this technology – particularly without any attempt to verify the

---

[116] *See* Doc. 225, at 2, 8.
[117] *See id.* at 1-2.
[118] *Id.* at 2.
[119] *See* Doc. 227. That motion will be granted in the order filed alongside this opinion, but that correction sheet does not solve the concerns of the Court. Many of the attempted modifications add the "see generally" signal to cases that are irrelevant to the matter cited. Adding a signal to a fictitious or irrelevant case does not make the material magically support Mr. Mattiacci's arguments.
[120] *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1346 (S.D. Fla. 2025).

accuracy of that material."[121] "It is incumbent upon all participants to adhere to professional standards governing their work."[122]

> Federal Rule of Civil Procedure 11(b)(2) provides:
>
> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.[123]

As the Defendants have noted, there are several troubling issues regarding the citations in Mr. Mattiacci's brief in support.[124] Those issues include the persistence of fictitious cases, quotations that do not appear in the referenced cases, and cases cited for support that "simply do not even come close to involving the issues being cited for."[125]

The issues with Mr. Mattiacci's briefing appear to be violations of Rule 11.[126] But what the Court finds even more troubling are Mr. Mattiacci's attempts to shift the blame for such mistakes. In his reply brief, he includes a long soliloquy on the

---

[121] *Lacey v. State Farm Gen. Ins. Co.*, No. CV 24- 5205, 2025 WL 1363069, at *3 (C.D. Cal. May 5, 2025).

[122] *McCarthy v. United States Drug Enf't Admin.*, 171 F.4th 245, 251 n.7 (3d Cir. 2026) (citing Jud. Conf. Comm. on Codes of Conduct, Guidance for Ethical Use of AI in the Judiciary, Section F "Accountability, Accuracy, and the Need for Verification" (February 2, 2026)).

[123] Fed. R. Civ. P. 11(b)(2).

[124] *See* Doc. 222, at 5-7, 18; Doc. 224, at 1-2.

[125] Doc. 222, at 18.

[126] The Third Circuit has also stated that other courts have found that "failure to verify the veracity and authenticity of citations violates an attorney's duty to provide thorough and competent representation." *McCarthy*, 171 F.4th at 250 n.3.

perils of solo practitioners, claims that the errors in the citations are minor, attempts to point to other purported misconduct by Defendant's counsel, and claims that these are "procedural distractions."[127]

Mr. Mattiacci is an attorney, and, as such, he is subject to the same duties that guide every attorney. "At the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely. Indeed, [there is] no other way to ensure that the arguments made based on those authorities are 'warranted by existing law,' or otherwise 'legally tenable.'"[128] Mr. Mattiacci cannot escape these duties by pointing to the duties of others, ascribing a label to his errors, or by claiming that pointing out his errors are attempts to misdirect.[129]

This is not the first instance of Mr. Mattiacci demonstrating ignorance or conscious disregard for the local and federal rules that govern practice in federal courts.[130] In a previous Order, I stated that "Plaintiffs' counsel has been given a great

---

[127] *See* Doc. 225, at 1-3, 8.

[128] *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (citing Fed. R. Civ. P. 11(b)(2) and *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

[129] His misdirection argument is particularly egregious in the Court's mind. It is based on his statement that "[t]here is an ample, uncontested body of law—totaling approximately 25 case citations and statutes in Plaintiffs' Memorandum—that independently support the three core pillars of requested relief." Doc. 225, at 2. It is unclear how Mr. Mattiacci came to this number, as it is entirely false. There are nowhere near 25 independent case or statutory citations contained within the brief that support the assertions he makes. The Court can barely count to ten citations to such forms of authority that accurately support the citations made by Mr. Mattiacci, and is baffled by the disingenuousness that this statement demonstrates.

[130] This is best evidenced by two examples. First, Mr. Mattiacci has repeatedly failed to abide by local court rules in filing with the Court, similar to the attempted response to the sur-reply of this motion, a filing that the Court declined to consider earlier in this opinion for a failure to

deal of lenience by the Court in regard to his adherence to Federal Rules of Civil Procedure and Local Court Rules. While these errors have been harmless in the past, the Court will no longer grant Plaintiffs' counsel the benefit of the doubt. In this vein, both parties are expected to strictly comply with this Order, the Federal Rules of Civil Procedure, and the United States District Court for the Middle District of Pennsylvania Rules of Court. . . . If they do not, they are on notice that the Court is prepared [to]… consider other appropriate sanctions."[131] It is now time for Mr. Mattiacci to answer for what appears to be violations of the Federal Rules of Civil Procedure.[132]

Therefore, Mr. Mattiacci will be required to show cause why he should not be sanctioned for an apparent violation of Rule 11.[133] He will first be required to address

---

[131]   abide by local court rules. Additionally, Defendants correctly raise a previous issue where, during the course of the trial, Mr. Mattiacci sent a member of my staff an *ex parte* email to advocate in support of arguments he made at the jury charge conference. Neither the email, nor the attachment within it, were sent to Defendant's counsel and were not filed on the docket. Mr. Mattiacci was admonished for his conduct, and the email and attachment were not reviewed by the Court.

[131]   Doc. 216, at 2.

[132]   The violations the Court is referencing are in regards to Plaintiffs' brief in support are: (1) the usage of artificial intelligence without checking the veracity of the cases cited; (2) the inclusion of citations that are fictitious; (3) the inclusion of quotations that appear nowhere in cited cases; (4) the inclusion of cases that do not stand for anything remotely similar to the assertion cited to the text of the opinion; and (5) the unwillingness of counsel to fully acknowledge, take responsibility for, and correct the citation errors—while claiming that they are all fixed.

[133]   The Court understands that a hearing will be had on this issue and wishes to make clear that Defendants and their counsel have no responsibility to attend that hearing. They may do so if they wish, but the Court does not now, and will not going forward, order them to appear on this specific issue.

this in a brief, and then will be required to attend a hearing on this show cause order.[134]

## III.    CONCLUSION

For the foregoing reasons, the omnibus motion is denied, except as to the request for delay damages. Additionally, Plaintiffs' motion to amend/correct his brief in support and Garware's motion for leave to file a sur-reply are granted. Finally, Mr. Mattiacci will be required to show cause why he should not be sanctioned for an apparent violation of Fed. R. Civ. P. 11.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[134] In this briefing, Mr. Mattiacci should address the potential violations referenced in footnote 132. He should also discuss his usage of AI in the drafting of his brief in support, how he checked the cases the veracity of what the AI produced, and whether there remain citation errors and assertions without support in his Brief in Support. Finally, he should address how the Court should square his filing of an errata sheet that substantively changed citations with his statements that the mistakes in citations were minor, clerical errors and had previously been fixed. *See* Doc. 225; Doc. 227, Ex. 2. He may reference the arguments made in his reply brief, *See* Doc. 225, but he should note that the Court does not find persuasive his arguments that try to describe these errors as minor, attempt to shift the narrative to Defendants, or present this as a type of David vs. Goliath situation. *See id.* at 1-3, 9.